IN RE COMPLAINT OF SMITH, APPELLANT, *v.* OHIO EDISON COMPANY,
INTERVENING APPELLEE; PUBLIC UTILITIES COMMISSION, APPELLEE.
[Cite as *In re Complaint of Smith v. Ohio Edison Co.,* 137 Ohio St.3d 7,
2013-Ohio-4070.]

*Public utilities—Disconnection of electrical service—Unsafe conditions—Orders*
*affirmed.*

(No. 2011-1828—Submitted April 23, 2013—Decided September 26, 2013.)

APPEAL from the Public Utilities Commission of Ohio, No. 10-340-EL-CSS.

_____

O'CONNOR, C.J.

## SUMMARY

{¶ 1} Appellant, C. Richard Smith, filed a complaint and an amended complaint pursuant to R.C. 4905.26 before the Public Utilities Commission against intervening appellee, Ohio Edison Company, a public utility under R.C. 4905.02. The complaint alleged that Ohio Edison had unlawfully removed the electric meter from Smith's property and disconnected his electric service.

{¶ 2} The commission held that Ohio Edison was justified in removing the meter and terminating the electric service. Under Ohio Edison's tariff, an application for new service is required before electric service can be established. The commission found that Smith had never made an application for new service at the property in question and, therefore, was not a customer of Ohio Edison. The commission further found that Ohio Edison had properly removed the electric meter from Smith's property without prior notice because the meter had been tampered with and was a safety hazard.

{¶ 3} Smith appealed to this court, raising three propositions of law. None has merit. Therefore, we affirm the commission's orders.

## FACTS AND PROCEDURAL BACKGROUND

{¶ 4} Smith is a customer of Ohio Edison at his residence, which is located at 7051 Kinsman-Nickerson Road in Kinsman, Ohio. In August 2008, Smith purchased a residential property at a sheriff's sale. Smith intended to renovate the residence and resell the property. He took possession of the property—located at 1930 Mahoning Avenue in Warren, Ohio—in September 2008. Shortly after taking possession, Smith discovered that the electricity was on at the residence.

{¶ 5} On September 10, 2008, Smith contacted Ohio Edison and talked with Shawntae Tucker, a customer-service representative. Smith informed Tucker that he had purchased the Mahoning Avenue property and wanted to put the electric service in his name. Smith gave Tucker his billing address (the Kinsman-Nickerson Road address) and telephone number. He also told Tucker that the electricity was on. Tucker responded that Ohio Edison's system showed that the power had been disconnected for over three years and that the power would be on only if someone had tampered with the meter. Tucker advised Smith that the company could verify when he had purchased the property so he would not be held responsible for tampering. Tucker also told Smith that the meter would need to be inspected before power could be restored and that she would have to transfer him to the New Service Upgrades Department in order to have electric service placed in his name. She then transferred Smith to Ohio Edison representative Tilwana Jennings.

{¶ 6} When Smith spoke with Jennings, he repeated his contact information, that he had recently purchased the Mahoning Avenue property, and that the power was on at that residence. Jennings confirmed that Smith would need to have a safety inspection before the power could be used, and she advised him to contact the building inspector for Warren, Ohio, to inspect the electrical system. Jennings further explained that once Ohio Edison received the inspection

approval, an order to restore the power could be scheduled. Jennings offered to place an order for Smith that day, but Smith said that he would call Ohio Edison back after he had scheduled his inspection with the city of Warren. Jennings told Smith to ask for "new service" when he called back, to reach the proper person to take his order.

{¶ 7} Nearly two months later, Smith called Ohio Edison on November 5, 2008, but he did not ask to speak to the new-service department. Instead, he spoke with customer-service representative Kathleen Fox. Smith stated his name, that his residence was in Kinsman, and that he had purchased a home in Warren that he was renovating. Smith informed Fox that the city of Warren had inspected the electrical system and that the electric service was on at the property. He said that he was waiting for someone to read the meter and that he had called back because no one had sent him a bill. Fox stated that Ohio Edison had received a release form from the city inspector advising that the premises could be reconnected to the system but that no application for service had been made. Fox said no bill was sent because the service at the Mahoning Avenue address was not in Smith's name. She then transferred Smith to another representative, Dawn Partello.

{¶ 8} Smith repeated his name and contact information to Partello, as well as the information about the purchase and inspection of the property. Smith also told Partello that vagrants had lived at the residence before he purchased the property and that they had "pulled the meter off and removed the sleeve and used the electricity." Smith informed Partello that he too had been using the electricity and thought that he had done everything necessary to have Ohio Edison read the meter and send him a bill.

{¶ 9} Partello responded that the inspection had been received and that Smith would be required to pay for the electricity he had used. Partello then told Smith that she would need to transfer him to the new-service department, which

was the department that would be "able to tie the order and the inspection together * * * [to] get the service put in your name for you." But rather than wait for the call to transfer, Smith apparently hung up the phone.

{¶ 10} Almost three months later, on January 30, 2009, Smith contacted Ohio Edison and spoke with customer-service representative Jaleia Johnson. Smith told Johnson that the power was off at the Mahoning Avenue residence and that Ohio Edison had removed the electric meter and placed a sticker on the meter base stating that the base was damaged. Smith asked if Ohio Edison was going to replace the meter that day because the water lines in the house would freeze and break.

{¶ 11} Johnson stated that it appeared that the company was charging Smith with tampering and that the charge would have to be resolved before electric service could be restored. Johnson told Smith that a "Dear Occupant" letter had gone to the Mahoning Avenue address notifying Smith to call Ohio Edison to open an account. Smith stated that the Mahoning Avenue property was unoccupied and recited his billing address in Kinsman, Ohio. Johnson explained that Smith had not placed an order for new service and that as far as the company was concerned, the electric service has not been on since 2005. At this point in the conversation, Smith asserted that an Ohio Edison representative had told him that the company would not be sending a bill until he had finished renovating the property; after that, the company would send him a "construction bill." Johnson reiterated that Ohio Edison had disconnected the electric service in 2005 and since then the company had never authorized having the service reconnected. Johnson said Ohio Edison believed that tampering had occurred and that Smith would need to discuss the matter with the company's revenue-protection department. The call was then transferred to customer-service representative Alicia Allen.

{¶ 12} After the transfer, Smith asked Allen when Ohio Edison was going to replace the meter base and turn the power back on. Allen informed Smith that

4

he would have to replace the meter base himself and once that was done, the company would reconnect the meter. Allen noted that when Smith called in September 2008, his call had been transferred to the new-service department, but Smith never talked with anyone from that department. Smith responded that he had called two different times and had done everything the company asked to receive service but that he had never received a bill.

{¶ 13} Smith called Ohio Edison back later that same day and spoke with company representative Nelson Rodriguez. Smith explained that he was ready to replace the meter base and needed to know if the power had been disconnected from the utility pole to the house. Smith also asked to be put in contact with someone from the company so he could give them his billing address. Smith wanted the company to send him a bill so he could pay whatever money he owed. Rodriguez said the company had his billing address listed at Kinsman-Nickerson Road but that the service at Mahoning Avenue was not in Smith's name. Rodriguez asked if Smith had been using electricity without the company's permission and if he had cleared the tampering charge with the revenue-protection department. In response, Smith stated that the city inspector had approved the work needed to have the power turned on. Rodriguez explained to Smith that the company needed an application for service in addition to the inspection approval. Rodriguez then transferred Smith to the revenue-protection department.

{¶ 14} Company representative Debbie Jones received Smith's call. Smith requested that Jones send him a bill so his account could be made current. Jones stated that Smith would need to pay $306.44 before power would be restored and that this amount included his meter usage, a security deposit, a reconnection fee, and a tampering charge. When Smith denied having tampered with the meter, Jones said she would have a supervisor with the tampering department contact him. The record indicates that no Ohio Edison supervisor ever contacted Smith about his dispute.

{¶ 15} On February 11, 2009, Smith again contacted Ohio Edison and spoke with Laura Miller. Smith gave Miller a history of his dispute with Ohio Edison and requested a face-to-face meeting with Ohio Edison to resolve the problem. Miller informed Smith that no meeting could be scheduled because Ohio Edison no longer has walk-in offices. Smith and Miller subsequently agreed that he was responsible for electric usage only from the date he took possession of the property. Miller also confirmed that Smith had not paid for his usage and had yet to confirm the possession date with Ohio Edison. Miller then gave Smith information on how to dispute the tampering charge.

{¶ 16} On February 12, 2009, Smith sent a fax to Ohio Edison verifying his purchase of the property and outlining his dispute of the tampering charge. Ohio Edison admitted receiving the fax, but no one from the company contacted Smith to resolve the matter.

{¶ 17} Over a year later, on March 17, 2010, Smith filed a pro se complaint against Ohio Edison with the commission pursuant to R.C. 4905.26. Smith subsequently retained counsel and filed an amended complaint on August 9, 2010. The amended complaint alleged, among other things, that Smith had established residential electric service to his Mahoning Avenue property through his repeated phone calls to Ohio Edison. Smith further alleged that Ohio Edison had terminated the electric service to this property without warning or proper notification to him, in violation of the Ohio Administrative Code. Smith claimed injury and requested that Ohio Edison pay damages.

{¶ 18} The commission held an evidentiary hearing on February 23, 2011. Following the filing of posthearing briefs, the commission issued its opinion and order on July 6, 2011. The commission first held that Smith was not a customer of Ohio Edison at the Mahoning Avenue property because he had not made a proper application for new service. The commission also found that Ohio Edison took the correct action when it disconnected the meter without prior notice to

Smith because the tampered meter and damaged meter base created an unsafe condition.

{¶ 19} On the other hand, the commission held that Ohio Edison's refusal to establish service until Smith paid tampering charges was not justified under the circumstances. The commission found that Smith was a customer of Ohio Edison at his residence in Kinsman and that the company did not provide adequate service when it failed to investigate and act diligently to resolve Smith's consumer complaint.

{¶ 20} Smith and Ohio Edison each sought rehearing before the commission. On August 31, 2011, the commission denied both applications for rehearing. Smith filed the instant appeal challenging the commission's orders. Ohio Edison declined to pursue an appeal to this court.

### STANDARD OF REVIEW

{¶ 21} "R.C. 4903.13 provides that a [Public Utilities Commission] order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We will not reverse or modify a commission decision as to questions of fact when the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. An appellant bears the burden of demonstrating that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record. *Id.*

{¶ 22} Although this court has "complete and independent power of review as to all questions of law" in appeals from the Public Utilities

Commission, *Ohio Edison Co. v. Pub. Util. Comm.*, 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997), we may rely on the expertise of a state agency in interpreting a law when "highly specialized issues" are involved and "agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly," *Consumers' Counsel v. Pub. Util. Comm.*, 58 Ohio St.2d 108, 110, 388 N.E.2d 1370 (1979).

## ANALYSIS

{¶ 23} The question on appeal is whether the commission erred in finding that Ohio Edison properly disconnected the electric service to Smith's Mahoning Avenue property. After review, we find that the commission's orders are lawful and reasonable.

## Proposition of Law No. 1

{¶ 24} Smith first asserts that the commission erred in determining that he did not become a customer of Ohio Edison at the Mahoning Avenue property, which he claims would have entitled him to notice before having the electric service disconnected. Smith raises two separate claims under his first proposition of law. Smith's primary claim is that he was a customer of Ohio Edison based on an oral contract with Ohio Edison. He also challenges the commission's determination that he failed to properly apply for new service with Ohio Edison. We reject Smith's claims for the following reasons.

### I. Smith's contract claim was not raised in his
### notice of appeal and is forfeited

{¶ 25} According to Smith's primary argument, he is a customer of Ohio Edison because he entered into an oral contract to purchase electricity from Ohio Edison for the Mahoning Avenue property. This, Smith argues, makes him a

customer under the Ohio Administrative Code,[1] which, according to Smith, defines a "customer" of a public utility by the existence of a contract or agreement.

{¶ 26} Smith raised this contract argument for the first time in his application for rehearing at the commission. Smith claimed on rehearing that he was not required to apply for service because he could be supplied service based upon an oral agreement, which he claims was established during the telephone calls with Ohio Edison's customer-service representatives that occurred on September 10 and November 5, 2008.

{¶ 27} Smith's first assignment of error in his notice of appeal reads as follows: "The Commission erred in finding that C. Richard Smith did not succeed in making an application for new service in his telephone calls on either September 10, 2008 or November 5, 2008." This assignment of error suggests that application was required to establish new service. In contrast, Smith's contract claim expressly denies that a formal application for service is required because electric service can be established by contract. Yet Smith's notice of appeal does not even mention the word "contract," let alone claim error relating to the formation of a valid contract.

{¶ 28} R.C. 4903.13 establishes that the procedure for seeking reversal of a commission order is through a notice of appeal "setting forth the order appealed from and the errors complained of." We lack jurisdiction to consider Smith's contract claim because he failed to set forth the alleged error in his notice of appeal. *Cincinnati Gas & Elec. Co. v. Pub. Util. Comm.*, 103 Ohio St.3d 398, 2004-Ohio-5466, 816 N.E.2d 238, ¶ 21; *Ohio Partners for Affordable Energy v.*

---

1. Smith's counsel repeatedly cites the current versions of the Ohio Administrative Code, not the versions in effect at the time that Smith was seeking to establish service. We will identify the applicable versions when appropriate.

*Pub. Util. Comm.*, 115 Ohio St.3d 208, 2007-Ohio-4790, 874 N.E.2d 764, ¶ 14-18.

## II. The commission did not err when it found that Smith had failed to apply for new service

{¶ 29} Smith also challenges the commission's finding that he did not succeed in applying to establish new service at the Mahoning Avenue address. Smith claims that Ohio Edison never informed him of the need to apply. He also asserts that the relevant Ohio Administration Code sections do not require a *formal* application to become a customer of a public utility.

### A. Ohio Edison did inform Smith that he needed to apply for new service

{¶ 30} Contrary to Smith's claim, there is evidence that Ohio Edison did inform Smith that he needed to apply to establish service in his name. Ohio Edison's representatives informed Smith during his first telephone call on September 10, 2008, that he needed to place an order to establish electric service. Ohio Edison witness Carlos Vidal testified during the hearing that an order "in essence is the application." For his part, Smith declined an offer from Ohio Edison representative Jennings during that first call to place an order on his behalf.

{¶ 31} During the second call on November 5, 2008, Ohio Edison told Smith that he needed to apply for new service. Representatives also informed Smith on more than one occasion that he needed to talk with Ohio Edison's new-service department in order to establish electric service in his name. But Smith ignored the instructions to contact the new-service department, and he even failed to continue his telephone call when he was transferred that department.

{¶ 32} In the end, the evidence demonstrates that Smith failed to properly apply for new service. Accordingly, we affirm the commission's factual finding.

**B. Smith misconstrues former Ohio Adm.Code 4901:1-10-12(B)(5);**
**Ohio Edison was not required to provide a written summary**
**of customer rights and obligations**

{¶ 33} Smith also contends that he met the definition of "applicant" under Ohio Adm.Code 4901:1-10-01(A).[2] Smith maintains that because he made an application for service, Ohio Edison was required under Ohio Adm.Code 4901:1-10-12(B)(5) to provide an explanation of what he was required to do in order to receive service.

{¶ 34} Smith's argument that he met the definition of applicant does not advance his claim. Former Ohio Adm.Code 4901:1-10-12 did require that electric distribution utilities provide to new customers a *written* summary of their rights and obligations. But this provision applied only "upon application for service." 2007-2008 Ohio Monthly Record 2-2515, effective Feb. 11, 2008. As noted, Smith never properly applied for new service. Smith was also not a "new customer" under this rule. Ohio Adm.Code 4901:1-10-12 defined "new customer" as "a customer who opens a new account." Smith, however, never opened a new account. Accordingly, Ohio Edison was not required to provide to Smith a written summary of his rights and obligations.

**C. Smith was required to apply for new service**

{¶ 35} Smith further maintains that he was not required to complete a formal application to receive service from Ohio Edison. While his argument is not entirely clear, Smith apparently contends that completion of the application process was not necessary to become an Ohio Edison customer because he met the definition of "customer" in the Ohio Administrative Code.

{¶ 36} At the time that Smith attempted to establish service with Ohio Edison, former Ohio Adm.Code 4901:1-18-01(E), in the chapter dealing with the

---

2. Ohio Adm.Code 4901:1-10-01(A) defines "[a]pplicant" as "a person who requests or makes application for service."

disconnection of residential service, defined "customer" as "any person who enters into a contractual agreement with the company to receive residential electric or gas service." 2004-2005 Ohio Monthly Record 243-244, effective Sept. 1, 2004. Former Ohio Adm.Code 4901:1-10-01(H) similarly defined "customer" as "any person who has an agreement, by contract and/or tariff with an [electric distribution utility] * * * to receive service." 2007-2008 Ohio Monthly Record 2-1278/1279, effective Oct. 22, 2007. Smith has not shown that he was a customer of Ohio Edison under either definition. First, Smith forfeited his claim that he was a "contract" customer of Ohio Edison by failing to preserve the issue in his notice of appeal. Second, as to whether Smith was a customer under an agreement by tariff, Smith made no claim that he established service under Ohio Edison's tariff.

{¶ 37} In the end, Smith's failure to submit an application for new service defeats his claim that he was a customer of Ohio Edison at the Mahoning Avenue address.

### Proposition of Law No. 2

{¶ 38} Former Ohio Adm.Code 4901:1-10-20(B)(1)(a), in effect at the time Smith contacted Ohio Edison, allowed an electric utility to "disconnect service for safety reasons without prior notice to a customer when" the meter had been "damaged, interfered with, displaced, bypassed, or otherwise tampered with." 2003-2004 Ohio Monthly Record 1697, effective Jan. 1, 2004. Smith contends in his second proposition of law that the commission erred when it found that Ohio Edison, without prior notice, had properly disconnected electric service for safety reasons pursuant to Ohio Adm.Code 4901:1-10-20.

### I. The record established that Ohio Edison disconnected Smith's electricity for safety reasons

{¶ 39} Smith asserts that the testimony of Ohio Edison witness Rick Padovan "established that Ohio Edison did not disconnect the electrical service

* * * for safety reasons." This is a factual argument, but Smith has failed to marshal any evidence to support it. The pertinent section of Smith's brief contains no citations to the record. This alone is grounds to reject Smith's claim. *Allnet Communications Serv.*, *v. Pub. Util. Comm.*, Inc., 70 Ohio St.3d 202, 206, 638 N.E.2d 516 (1994) (rejecting argument where appellant "provided no further reasoning or record citations to support" its argument); *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 39 ("unsupported legal conclusions" do not establish error); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 13, quoting *Day v. N. Indiana Pub. Serv. Corp.*, 164 F.3d 382, 384 (7th Cir.1999) ("Appellate attorneys should not expect the court 'to peruse the record without the help of pinpoint citations' to the record").

{¶ 40} Moreover, the evidence supported the commission's order that tampering that created a safety issue had occurred. The commission found that "[b]oth parties agreed that there was tampering in connection with the meter at 1930 Mahoning Avenue and that the meter base was damaged, creating an unsafe condition." *Smith v. Pub. Util. Comm.*, Pub. Util. Comm. No. 10-340-EL-CSS, at 19 (July 6, 2011), available at http://dis.puc.state.oh.us/DocumentRecord.aspx ?DocID=f8867bdf-8763-41d8-b19c-7c14b2b8f07c, last accessed September 16, 2013. Witnesses from each party did indeed testify to this. Smith testified that the meter had been tampered with, that the meter base was broken, and that it was not safe for Ohio Edison to provide service through a broken meter base. And Padovan testified that the meter had been tampered with, the meter base was broken, and a tampered meter was a danger to the public.

## II. Smith's argument is not persuasive

{¶ 41} Smith offers one argument in response to the commission's finding that Ohio Edison disconnected Smith's electricity for safety reasons: the company

could not have disconnected for safety reasons, because it was aware that electric service was on at a vacant property for four months before it disconnected service. That is, Smith contends that the delay in disconnecting service undermines Ohio Edison's claim that it was done for safety.

**{¶ 42}** Despite Smith's contention, Ohio Edison's failure to disconnect service before January 2009 does not prove that it did not disconnect service for safety reasons. Indeed, the argument itself is logically flawed: the absence of one thing (prompt disconnection) does not, by itself, prove the absence of another (lack of a safety issue). Moreover, Smith's claim that Ohio Edison should act promptly to disconnect service when a safety issue arises is undermined by his concession that "Ohio Edison should not be limited to acting within a specific or limited period time * * * [because this] would defeat the very purpose of disconnecting residential service for safety reasons."

**{¶ 43}** In sum, there is ample evidence in the record to support the commission's finding. *See Ohio Consumers' Counsel v. Pub. Util. Comm.*, 117 Ohio St.3d 301, 2008-Ohio-861, 883 N.E.2d 1035, ¶ 50 (a factual determination made by the commission will not be disturbed by this court absent a showing that it is clearly unsupported by the record). Accordingly, we reject Smith's second proposition of law.

## Proposition of Law No. 3

**{¶ 44}** Smith's final proposition of law asserts error in the commission's refusal to grant rehearing on his claim that the audio recordings of the telephone conversations between Smith and Ohio Edison were altered. The audio recordings were played during the evidentiary hearing. Smith's application for rehearing requested that the commission grant rehearing in order to investigate and compare the original disc recordings with the recordings played during the hearing and to allow Smith to develop the issue further.

{¶ 45} The commission denied rehearing on two grounds. First, the commission noted that the parties had stipulated that the recordings were authentic. Second, the commission observed that Smith's counsel received the audio recordings from Ohio Edison six days before the evidentiary hearing, but counsel provided no explanation in his rehearing application for his failure to challenge the recordings at the hearing.

{¶ 46} On appeal, Smith claims that the commission should have granted his rehearing application because he provided "some evidence" to support his claim that the recordings were altered. For the following reasons, we find no error in the commission's decision to deny rehearing.

{¶ 47} First, Smith's counsel completely ignores that he signed a stipulation before the hearing that the recordings were authentic. The stipulation states that "[t]he tape recorded telephone conversations between C. Richard Smith and Ohio Edison personnel * * * are authentic recordings of those conversations made at the time of the telephone conversations in the ordinary course of business by Respondent Ohio Edison Company." Yet on appeal, Smith's counsel makes no mention of the stipulation, let alone offers an explanation that would serve as a reason to invalidate the stipulation at this late date.

{¶ 48} Second, the commission did not deny rehearing based on a lack of evidence. Rather, it found that the alleged error had been waived. We agree with this conclusion. As noted, Smith did not raise any complaint regarding the audio recordings until he filed his application for rehearing, long after the evidentiary hearing where those recordings were played. Smith did not object to the fact that he received the compact discs only six days before the hearing or argue that he had insufficient time before the hearing to review the recordings. He also waited until after the hearing to hire an audio expert, instead of seeking to have the hearing continued so he could retain an expert to review the recordings before the hearing. By failing to take any of these steps, Smith deprived the commission of

an opportunity to cure any error when it reasonably could have. Therefore, the commission correctly found that the issue had been waived. *See Parma v. Pub. Util. Comm.*, 86 Ohio St.3d 144, 148, 712 N.E.2d 724 (1999) ("we do not accept * * * objections" when appellant has "deprived the commission of an opportunity to redress any injury or prejudice that may have occurred"); *In re Application of Am. Transm. Sys., Inc.*, 125 Ohio St.3d 333, 2010-Ohio-1841, 928 N.E.2d 427, ¶ 31 (same).

### CONCLUSION

{¶ 49} Smith has failed to show that the commission erred in finding that he was not a customer of Ohio Edison at the Mahoning Avenue property. He has not demonstrated any error in the commission's finding that Ohio Edison had lawfully disconnected electric service to that property. Therefore, we affirm the commission's orders.

Orders affirmed.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Bruce M. Broyles Co., L.P.A., and Bruce M. Broyles, for appellant.

Michael DeWine, Attorney General, and William L. Wright, John H. Jones, and Steven L. Beeler, Assistant Attorneys General, for appellee Public Utilities Commission of Ohio.

Jones Day, Alison E. Haedt, and David A. Kutik; and Carrie M. Dunn, for intervening appellee Ohio Edison Company.

_____