[Cite as *Access Urgent Med. Care of Upper Arlington v. Ohio Dept. of Commerce*, 2024-Ohio-445.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Access Urgent Medical<br>Care of Upper Arlington, | : | |
| | : | |
| Appellant-Appellant, | : | |
| | : | No. 22AP-668 |
| v. | | (C.P.C. No. 21CV-2589) |
| | : | |
| Ohio Department of Commerce, | : | (ACCELERATED CALENDAR) |
| | : | |
| Appellee-Appellee. | : | |
| | : | |
| | : | |
| Access Urgent Medical<br>Care of Pickerington, | : | |
| | : | |
| Appellant-Appellant, | : | |
| | : | No. 22AP-669 |
| v. | | (C.P.C. No. 21CV-3618) |
| | : | |
| Ohio Department of Commerce, | : | (ACCELERATED CALENDAR) |
| | : | |
| Appellee-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on February 8, 2024

**On brief:** *Percy Squire Co., LLC*, and *Percy Squire*, for appellant.

**On brief:** *Dave Yost*, Attorney General, and *L. Scott Helkowski*, for appellee. **Argued:** *L. Scott Helkowski.*

APPEALS from the Franklin County Court of Common Pleas

MENTEL, P.J.

{¶ 1} After an investigative audit and administrative proceeding confirming its results, appellee, the Division of Unclaimed Funds of the Ohio Department of Commerce ("Division"), ordered appellants, Access Urgent Medical Care of Upper Arlington

("AUMCUA") and Access Urgent Medical Care of Pickerington ("AUMCP"), to report and remit their respective unclaimed funds liabilities. AUMCUA and AUMCP filed an administrative appeal of the adjudication orders to the Franklin County Court of Common Pleas. The trial court affirmed after concluding that reliable, probative, and substantial evidence supported the orders. For the reasons that follow, we conclude that the trial court did not abuse its discretion and affirm the Division's orders.

{¶ 2} R.C. 169.03(A) imposes a duty on any holder of unclaimed funds to report them to the Division of Unclaimed Funds of the Ohio Department of Commerce. Among other details, the report must include information identifying the owner of the funds, the amount in question, and the date that the funds became payable. *See* R.C. 169.03(A)(2). Holders must file unclaimed funds reports on a yearly basis. R.C. 169.03(D). The Division is authorized to audit "the records of any holder to determine compliance" with the statutory reporting requirements. R.C. 169.03(G)(1).

{¶ 3} The Division conducted audits of AUMCUA and AUMCP, two urgent care facilities with a common owner. With regard to AUMCUA, a division auditor examined the 2005-2015 records of AUMCUA and presented preliminary findings of $85,846.23 in reporting liability to its Senior Vice President, Patti Liapakis, on March 30, 2015. This finding arose from unrefunded patient credit balances. AUMCUA subsequently eliminated $10,097.10 of the liability, leaving a total unclaimed funds reporting liability of $75,749.13 at the time of the July 2, 2020 closing examination. It was given a deadline of August 1, 2020 to file a report with the Division and pay the liability or appeal. AUMCUA had ceased business operations on May 15, 2018.

{¶ 4} AUMCUA appealed. At an August 19, 2020 hearing, its attorney submitted a September 1, 2012 agreement with a third party, Medical Billing Solutions Services, Inc. ("MBSS"), for the provision of medical billing services to AUMCUA's patients. Its attorney also provided a copy of an April 1, 2017 settlement agreement between AUMCUA and MBSS terminating litigation between the entities.

{¶ 5} The state administrator upheld the unclaimed funds liability of $75,749.13, noting that AUMCUA had not provided any documentation to demonstrate that it had eliminated any portion of the liability. The administrator also rejected AUMCUA's argument that MBSS was responsible for the unclaimed funds liability because the

statutory duty to identify and report unclaimed funds was not delegable to a third party. (Sept. 16, 2020 State Admr. Decision.)

{¶ 6} AUMCUA appealed the state administrator's decision and requested a hearing. (Oct. 7, 2020 Notification of Formal Hearing.) At the request of AUMCUA, the Division issued subpoenas to MBSS and its successor, Medical Transcription Billing, Corp. ("MTBC"), seeking all patient billing records from 2012-2017.

{¶ 7} The hearing for AUMCUA's appeal was held on January 12, 2021. Two auditors testified for the Division and explained the audit process and its findings. Stephanie Dilullo, the Director of Operations for AUMCP, testified about the billing inaccuracies that had prompted the litigation with MBSS. Among other exhibits, AUMCUA introduced copies of its billing agreement with MBSS and the eventual settlement agreement.

{¶ 8} The hearing officer issued findings of fact and conclusions of law that mirrored the state administrator's decision. (Feb. 9, 2021 Findings of Fact & Conclusions of Law.) AUMCUA filed objections, but the Superintendent of the Division overruled them, adopted the hearing officer's decision in its entirety, and ordered AUMCUA to pay $75,749.13 in unclaimed funds liability. (Apr. 22, 2021 Final Order.)

{¶ 9} The audit process of AUMCP followed a similar trajectory. The final audit resulted in an unclaimed funds liability of $67,261.98. (June 4, 2021 Final Order.) AUMCP appealed and requested an administrative hearing, at which the Division's auditors testified. Ms. Dilullo testified on behalf of AUMCP and again described problems with the billing practices of MBSS. AUMCP did not request that the Division issue any subpoenas for the hearing.

{¶ 10} The hearing officer's findings of facts and conclusions of law recommended denying AUMCP's appeal and affirming the state administrator's finding of $67,261.98 in unclaimed funds liability. The Superintendent of the Division overruled AUMCUA's objections and adopted the hearing officer's decision in its entirety. *Id.*

{¶ 11} AUMCUA and AUMCP appealed to the trial court on June 9, 2021. The trial court consolidated the appeals on September 23, 2021.

{¶ 12} The trial court affirmed the Division's orders, finding that they were based on reliable, probative, and substantial evidence and in accordance with law. (Oct. 10, 2022 Decision & Entry at 15.) Addressing the evidentiary basis for the liability findings, the trial

court noted that there was "an absence of disagreement over the audit results, methodology and substantive findings." *Id.* at 12. Neither AUMCUA nor AUMCP "produced any further documentation" to challenge the liability findings, nor did they "dispute the audit's methodology." *Id.* Rather, their "appeals focus strictly on the burden of production and associated consequences of [the] lack of cooperation from [their] contracted billing provider." *Id.* However, the trial court rejected the appellants' contention that they had "duly tried to comply with the controlling regulations, but have been precluded from getting full records to meet their reporting obligation" because MBSS and MTBC failed to respond to the subpoenas. *Id.* at 5. The trial court emphasized that R.C. 169.03 "places the burden on [the appellants] to refute the Division's audit results" and any "[t]hird-party negligence does not relieve" appellants of that burden. *Id.* at 12. "Appellants delegated their billing work to MBSS and its successor [MTBC], but are not permitted to delegate statutory duties that derive from this function." *Id.* at 13.

{¶ 13} The trial court also rejected the argument that, based on the doctrine of spoliation, the purported negligence of MBSS and MTBC entitled AUMCUA and AUMCP to an inference that there was no unclaimed funds liability. *Id.* at 5, 14. The trial court stated that "the doctrine of spoliation does not apply in the setting of administrative agencies in reaching adjudication orders." *Id.* at 14. The trial court noted as well that there was "no evidence that the Division willfully destroyed evidence or encouraged others to do so," as spoliation requires. Accordingly, the trial court affirmed the Division's final orders.

{¶ 14} AUMCUA and AUMCP appeal and assert the following sole assignment of error:

> The Court of Common Pleas erred when it concluded that the decision of the Department of Commerce was supported by reliable, probative and substantial evidence.

{¶ 15} "Any party adversely affected by any order of an agency issued pursuant to an adjudication may appeal from the order of the agency" to the appropriate court of common pleas. R.C. 119.12(A). "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12(N). If it does not affirm the order, the

court "may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." *Id.*

{¶ 16} The review in the court of common pleas "is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Beach v. Ohio Bd. of Nursing*, 10th Dist. No. 10AP-940, 2011-Ohio-3451, ¶ 13, quoting *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), and *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). "The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but 'the findings of the agency are by no means conclusive.' " *Beach* at ¶ 13, quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980). No such deference is afforded questions of law, however, which the common pleas court reviews de novo while "exercising its independent judgment" to determine if the order is in accordance with law, as required by R.C. 119.12(N). *Id.*

{¶ 17} Review by the court of appeals in a subsequent appeal "is even more limited than that of the trial court." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). While the court of common pleas is tasked with reviewing the evidence, "this is not a function of the appellate court." Rather, the court of appeals must "determine only if the trial court has abused its discretion" when conducting its review. *Id.* "Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court." *Id.* Furthermore, "courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession." *Id.* "An appellate court, however, has plenary review of purely legal questions." *Beach* at ¶ 14, citing *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

{¶ 18} Although the assignment of error asserts that the trial court erroneously concluded that reliable, probative, and substantial evidence supported the decision of the Division, appellants fail to describe any deficiency in the evidence supporting the liability findings in their briefing. Instead, their sole contention on appeal is that they are entitled to a "favorable inference" concerning the records that MBSS and MTBC failed to produce in response to the Division's subpoena. (Brief of Appellants at 11.) Reciting the elements of a tort claim for intentional interference with or destruction of evidence, or spoliation,

appellants claim that such an inference is warranted because the "situation is analogous to one where a party causes evidence to be unavailable because of some negligent act." *Id.* at 10.

{¶ 19} Appellants' reference to a negligent act indicates why their situation does not compare to that of a party prejudiced by another's spoliation of evidence.[1] "Ohio does not recognize a cause of action for negligent spoliation of evidence." *Marok v. Ohio State Univ.*, 10th Dist. No. 13AP-12, 2014-Ohio-1184, ¶ 36, citing *White v. Ford Motor Co.*, 142 Ohio App.3d 384, 388 (10th Dist.2001). Rather, a spoliation of evidence claim requires that a plaintiff "establish the following elements: (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by the defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Simek v. Orthopedic & Neurological Consultants, Inc.*, 10th Dist. No. 17AP-671, 2019-Ohio-3901, ¶ 99, citing *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29 (1993).

{¶ 20} According to appellants, the act in question is the Division's "inability to compel MTBC to comply with" the Division's subpoena. (Brief of Appellants at 11.) Yet they concede that they "are not alleging that the [Division] acted intentionally or in bad faith." *Id.* This concession is fatal to their argument because " 'willful' reflects an intentional and wrongful commission of the act" that forms the basis for a spoliation claim. *White* at 387, citing *Drawl v. Cornicelli*, 124 Ohio App.3d 562, 567 (11th Dist.1997). And appellants nowhere allege the destruction of their medical billing records by any party. The

---

[1] This analysis assumes for the sake of argument that a spoliation claim might be cognizable in an administrative proceeding. The trial court ruled otherwise, but citied cases that more specifically held that the Ohio Rules of Civil Procedure do not apply in administrative proceedings. *See LTV Steel Co. v. Indus. Comm.*, 140 Ohio App.3d 680, 691 (10th Dist.2000) (holding that discovery provision in Ohio Adm.Code 4121-3-09 promulgated by Industrial Commission did not conflict with its enabling legislation, R.C. 4123.09, and that agency, not the Ohio Rules of Civil Procedure, determined extent of discovery); *Bell v. State Med. Bd. of Ohio*, 6th Dist. No. L-85-441, 1986 Ohio App. LEXIS 7131, *7 (June 13, 1986) (affirming the State Medical Board's refusal to provide doctor with a list of witnesses because "the Rules of Civil Procedure do not apply in an agency hearing"). Although "Civ.R. 37 provides trial courts with broad discretion to impose sanctions upon a party who violates the rules governing the discovery process," spoliation of evidence is an intentional tort, not a procedural remedy. *Elliott-Thomas v. Smith*, 154 Ohio St.3d 11, 2018-Ohio-1783, ¶ 16. Thus, out of an abundance of caution, we decline to adopt the trial court's proposition, which may sweep too broadly. *See Smith v. Ohio Edison Co.*, 137 Ohio St.3d 7, 2013-Ohio-4070, ¶ 48 (holding that appellant had waived argument that utility company altered telephone recordings used as evidence in administrative hearing because appellant had previously stipulated to their authenticity).

Supreme Court of Ohio has rejected the argument that "interference with or concealment of evidence" during litigation amounts to a willful act in a spoliation claim, and appellants' theory does not even allege that level of culpability. *Elliott-Thomas v. Smith*, 2018-Ohio-1783 at ¶ 17.

{¶ 21} The only identifiable negligence during the administrative proceeding was appellants' failure to request the specific remedy for noncompliance with a subpoena provided by the Unclaimed Funds Act. R.C. 169.17(D) states: "If a person fails to * * * obey any subpoena, give testimony, produce any book, record, or other document as required by a subpoena * * *, the court of common pleas of any county in this state, upon application made to it by the director, shall compel obedience by attachment proceedings for contempt, as in the case of disobedience of the requirements of a subpoena issued from the court or a refusal to testify therein." The Division asserts that AUMCUA "did not raise the issue that it had not received the documents" at a pre-hearing conference. (Brief of Appellee at 19.) AUMCUA never "asked for a continuance" or "requested that the Division apply to the Franklin County Court of Common Pleas to enforce the subpoena." *Id*. In the AUMCP proceeding, appellants "never requested subpoenas" at all. *Id*. Appellants do not contest this characterization of events. They assert that "[t]he absence of these records is fatal to [their] defense in this matter." (Brief of Appellants at 9.) Nevertheless, appellants failed to request the statutory remedy for obtaining the documents in one proceeding and, in the other, did not even request a subpoena to obtain them. They are not entitled to an extension of the doctrine of spoliation beyond recognition as a remedy for these failures.

{¶ 22} In the end, the "dispute [that] has been ongoing between appellants and MBSS since 2015 for patient billing records" distracts from the real issue. *Id*. Because appellants had "possession, custody, or control of moneys" owed to the patients who sought treatment at their clinics, they met the statutory definition of holders of unclaimed funds. R.C. 169.01(D)(1). As "holder[s] of unclaimed funds" under R.C. 169.03(A)(1), appellants had a duty to annually file accurate reports with the Division containing the information specified in R.C. 169.03(A)(2). Their third-party billing servicers were not holders of unclaimed funds and did not have the corresponding duty. Appellants had findings from the Division's preliminary audit of their records in 2015, contemporaneous with the "dispute" that resulted in litigation with their third-party billing servicers. They entered into a settlement agreement with the servicers in 2017, years before the administrative

appeals of their liability findings concluded. If the servicers breached the settlement agreement, appellants had the responsibility of enforcing it and should have done so during the years that the administrative process took to conclude. The fact that they did not do so, or otherwise retain or obtain the records needed to file accurate reports with the Division, is not a defense to their failure to fulfill their duties under R.C. 169.03(A) as holders of unclaimed funds.

{¶ 23} For the foregoing reasons, we conclude that the trial court did not abuse its discretion when affirming the Division's final orders concerning appellants' unclaimed funds liability. Accordingly, the assignment of error is overruled and the judgments of the Franklin County Court of Common Pleas are affirmed.

*Judgments affirmed.*

BOGGS and LELAND, JJ., concur.

_____