IN RE APPLICATION OF OHIO POWER COMPANY FOR APPROVAL OF A MECHANISM TO RECOVER DEFERRED FUEL COSTS ORDERED UNDER R.C. 4928.144; OHIO POWER COMPANY, APPELLANT AND CROSS-APPELLEE; INDUSTRIAL ENERGY USERS-OHIO, APPELLEE AND CROSS-APPELLANT; PUBLIC UTILITIES COMMISSION, APPELLEE AND CROSS-APPELLEE.

[Cite as *In re Application of Ohio Power Co.,*
144 Ohio St.3d 1, 2015-Ohio-2056.]

(No. 2012–2008—Submitted February 3, 2015—Decided June 2, 2015.)

KENNEDY, J.

## I. SUMMARY

{¶ 1} In the orders on appeal, appellee and cross-appellee, Public Utilities Commission of Ohio ("PUCO" or "the commission"), approved a mechanism called a phase-in recovery rider ("PIRR") for appellant and cross-appellee, Ohio Power Company, to recover fuel costs that were incurred under the company's first electric-security plan ("ESP") but were deferred for future collection. *See In re Application of Columbus S. Power Co. & Ohio Power Co. for Approval of a Mechanism to Recover Deferred Fuel Costs Ordered Under R.C. 4928.144,* Pub. Util. Comm. Nos. 11–4920–EL–RDR and 11–4921–EL–RDR (Aug. 1, 2012) (the "PIRR Order"), available at http://dis.puc.state.oh.us/DocumentRecord.aspx?Doc ID=c3ec26df–e5b8–4e2a–9e8c–f1825680fef8 (last accessed Mar. 25, 2015). In the order approving Ohio Power's first ESP, the commission (1) authorized the recovery of "carrying charges"—a type of finance charge—on the deferred fuel costs until the costs were fully recovered, (2) set the rate to calculate carrying charges on the deferred fuel costs, and (3) authorized Ohio Power to recover the deferred fuel costs plus carrying charges from 2012 to 2018. *See In re Application of Columbus S. Power Co. & Ohio Power Co. for Approval of an Elec. Sec. Plan,* Pub. Util. Comm. Nos. 08–917–EL–SSO and 08–918–EL–SSO, at 20–23 (Mar. 18, 2009) (the "ESP Order"), available at http://dis.puc.state.oh.us/

DocumentRecord.aspx?DocID=b125aec6–ded7–4f5c–b908–6520f2e0cb3f (last accessed Mar. 25, 2015); PIRR Order at 17–20.

{¶ 2} The commission's PIRR Order modified the carrying-charge rate established in the ESP Order, cutting it by more than half. This reduced Ohio Power's recovery of carrying charges by over $130 million. PIRR Order at 17–19; April 3, 2012 Revised Staff Comments and Recommendations ("Revised Staff Report") at 5–6, available at http://dis.puc.state.oh.us/DocumentRecord.aspx?Doc ID=9203c7aa–348b–4d94–a961–efd24a568bb4 (last accessed Mar. 25, 2015).

{¶ 3} On appeal, Ohio Power challenges the commission's decision to reduce its carrying-charge recovery. Ohio Power's appeal raises one argument that has merit: the commission's order violates R.C. 4928.143(C)(2)(a) by depriving the company of its right to withdraw the modified ESP. Therefore, we reverse the commission's order insofar as it reduces the carrying-charge rate.

{¶ 4} Appellee and cross-appellant, Industrial Energy Users–Ohio ("IEU"), filed a cross-appeal,[1] raising one issue for our consideration: the commission erred when it refused to reduce the PIRR to account for Ohio Power's accumulated deferred income taxes.[2] We hold that IEU's cross-appeal is barred by collateral estoppel.

## II. FACTS AND PROCEDURAL BACKGROUND

{¶ 5} On March 18, 2009, the commission issued an opinion and order approving Ohio Power's first ESP, to be in effect from 2009 to 2011. The ESP Order established caps on how much Ohio Power could increase rates during each year of the plan in order to ensure rate stability and to mitigate the effect of rate increases on customers. ESP Order at 22. It did so under R.C. 4928.144, which authorizes "any just and reasonable phase-in of any electric distribution utility rate * * * as the commission considers necessary to ensure rate or price stability for consumers." To ensure that Ohio Power stayed under the rate caps, the commission directed it to phase in the rate increases approved in the ESP by deferring for future collection the portion of the fuel costs that exceeded the rate caps.

{¶ 6} R.C. 4928.144 also authorized the commission to allow Ohio Power to recover carrying charges on the fuel costs earned but not collected in each year of the ESP. In its ESP application, Ohio Power proposed that carrying charges

---

1. The Office of the Ohio Consumers' Counsel also filed a cross-appeal, but we granted its application for dismissal of its appeal on January 20, 2015. 141 Ohio St.3d 1432, 2015-Ohio-130, 23 N.E.3d 1177.

2. IEU's notice of cross-appeal raised three assignments of error. IEU, however, failed to brief its second assignment of error. And on December 18, 2014, we granted IEU's motion to withdraw its third assignment of error. 141 Ohio St.3d 1414, 2014-Ohio-5543, 21 N.E.3d 1109.

be calculated using the company's Weighted Average Cost of Capital ("WACC"). IEU did not object to using the WACC for the calculation during the ESP proceedings, but other parties did. Despite the objections, the commission accepted Ohio Power's proposal and set the carrying-charge rate at the WACC. ESP Order at 20–21, 23.

{¶ 7} As required by R.C. 4928.144, the ESP Order also provided that the deferred fuel costs would be collected through an unavoidable surcharge, meaning a charge imposed on both shopping and nonshopping customers. And the commission established a recovery period of 2012 through 2018 for Ohio Power to recover the deferred fuel costs and carrying charges by increasing its rates. ESP Order at 22–23.

{¶ 8} Various parties appealed from the ESP Order. Yet no party challenged the commission's decision to calculate carrying charges using the WACC. *In re Application of Columbus S. Power Co.*, 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655.

{¶ 9} This case began when Ohio Power filed an application with the commission to approve a mechanism to recover the accumulated deferred fuel costs from the first ESP period and the carrying charges. As noted earlier, consistent with the ESP Order, Ohio Power sought to implement a mechanism in the form of a nonbypassable PIRR to be in effect from January 2012 through December 2018. PIRR Order at 2; Application for Approval of Recovery Mechanism (Sept. 1, 2011) at ¶ 3–4, available at http://dis.puc.state.oh.us/DocumentRecord.aspx?Doc ID=fd450fd8–c987–4d1b–b56e–3efddb0c14d1 (last accessed Mar. 25, 2015).

{¶ 10} The commission approved, in part, Ohio Power's PIRR application. The commission, however, deemed it necessary to modify the part of the ESP Order that established the WACC as the carrying-charge rate. Specifically, the commission determined that the WACC rate would apply only during the ESP period (2009 to 2011). But once Ohio Power began to recover deferred fuel costs from customers in 2012, the commission ordered, the company was to calculate carrying charges at the company's long-term-cost-of-debt rate. PIRR Order at 17–19. The commission's decision to apply the long-term-cost-of-debt rate of 5.34 percent, which was less than half the commission-approved WACC rate of 11.15 percent, reduced Ohio Power's recovery of carrying charges during the recovery period by over $130 million. *Id.* at 7, 17; Revised Staff Report at 4–6. The commission also rejected IEU's request to reduce the deferred-fuel-cost balance to account for savings to Ohio Power from accumulated deferred income taxes ("ADIT") during the ESP period. PIRR Order at 19–20, 9–10.

{¶ 11} Ohio Power and IEU filed timely applications for rehearing at the commission. Each was denied. Fifth Entry on Rehearing (Oct. 3, 2012),

available at http://dis.puc.state.oh.us/DocumentRecord.aspx?DocID=b100f2d4–6 cc5–421c–ae9d–9075cc786a45 (last accessed Mar. 25, 2015).

{¶ 12} Ohio Power then filed a notice of appeal, challenging the commission's modification of the carrying-charge rate. IEU filed a notice of cross-appeal, arguing that the commission erred when it refused to reduce the deferred-fuel-cost balance to account for ADIT. As will be discussed in detail below, Ohio Power has demonstrated one instance of reversible error in the commission's order. The issue raised by IEU's cross-appeal, however, is barred by collateral estoppel.

## III. STANDARD OF REVIEW

{¶ 13} "R.C. 4903.13 provides that a PUCO order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We will not reverse or modify a PUCO decision as to questions of fact when the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The appellant bears the burden of demonstrating that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record. *Id.*

{¶ 14} Although this court has "complete and independent power of review as to all questions of law" in appeals from the PUCO, *Ohio Edison Co. v. Pub. Util. Comm.*, 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997), we may rely on the expertise of a state agency in interpreting a law where "highly specialized issues" are involved and "where agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly," *Consumers' Counsel v. Pub. Util. Comm.*, 58 Ohio St.2d 108, 110, 388 N.E.2d 1370 (1979).

## IV. DISCUSSION

### A. Ohio Power's Appeal

{¶ 15} Ohio Power's appeal challenges the commission's authority to modify the ESP Order issued in 2009. According to Ohio Power, the commission has only limited authority to modify its prior orders and was prohibited from changing the carrying-charge rate established in the ESP Order in this case. Ohio Power attacks the commission's order on five grounds, but only two were properly preserved by being set forth in the notice of appeal: (1) res judicata barred the commission from modifying the ESP Order in this case and (2) the commission

modified the ESP Order after the plan had expired, depriving the company of its right to withdraw a modified ESP in violation of R.C. 4928.143(C)(2)(a). We hold that Ohio Power's res judicata argument lacks merit, but we agree with its argument that the commission's order violates R.C. 4928.143(C)(2)(a).

### 1. The commission is entitled to modify a prior order, provided that it explains the change and the new regulatory course is permissible

{¶ 16} We have instructed the commission to "respect its own precedents in its decisions to assure the predictability which is essential in all areas of the law, including administrative law." *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 42 Ohio St.2d 403, 431, 330 N.E.2d 1 (1975), *superseded on other grounds by statute as recognized in Babbit v. Pub. Util. Comm.*, 59 Ohio St.2d 81, 89, 391 N.E.2d 1376 (1979). This does not mean, however, that the commission may never revisit a particular decision, only that if the commission does change course, it must explain why. *In re Application of Columbus S. Power Co.*, 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 52, citing, e.g., *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 18. "When the commission has made a lawful order, it is bound by certain institutional constraints to justify that change before such order may be changed or modified." *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 10 Ohio St.3d 49, 50–51, 461 N.E.2d 303 (1984). The court has not set the explanatory hurdle very high. In a case in which the commission did not follow its earlier precedent, we said that if the commission had put "[a] few simple sentences" in its order to explain why the earlier case was no longer controlling, it would have been sufficient. *Consumers' Counsel v. Pub. Util. Comm.*, 16 Ohio St.3d 21, 21–22, 475 N.E.2d 786 (1985).

{¶ 17} The commission's modification power, however, is not without limits. "Modifying a regulatory scheme is not problematic in itself. Agencies undoubtedly may change course, provided that the new regulatory course is permissible." *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 18. And if the commission does see fit to depart from a prior order, the commission "must explain why," and "the new course also must be substantively reasonable and lawful." *In re Application of Columbus S. Power Co.*, 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 52. *See also Fed. Communications Comm. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009) (an agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates" [emphasis deleted]).

{¶ 18} In this case, the commission explained why it needed to modify the ESP Order. The issue, then, is whether the commission's new course is lawful and reasonable.

## 2. Ohio Power has not shown that the doctrine of res judicata applies here to bar the commission from modifying the ESP Order

{¶ 19} Ohio Power's first argument is that res judicata principles apply here to bar the commission from modifying the carrying-charge rate set in the ESP Order. Ohio Power, however, has failed to explain why res judicata applies in this case.

{¶ 20} In Ohio, the doctrine of res judicata includes both claim preclusion (historically known as estoppel by judgment) and issue preclusion (traditionally known as collateral estoppel). *See O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). "These doctrines operate to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction." *Consumers' Counsel v. Pub. Util. Comm.*, 16 Ohio St.3d 9, 10, 475 N.E.2d 782 (1985). Res judicata, whether claim preclusion or issue preclusion, applies to administrative proceedings that are of a judicial nature. *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 2009-Ohio-1704, 905 N.E.2d 1210, ¶ 29; *Consumers' Counsel* at 10.

{¶ 21} Ohio Power presents a single theory of legal error: res judicata principles apply here to divest the commission of "jurisdiction to change or modify an adjudicatory determination made in a prior final order, especially one appealed to the Supreme Court of Ohio."[3] According to Ohio Power, the commission was estopped from modifying the carrying-charge rate in this case because it lost jurisdiction over the matter once it was finally adjudicated in the ESP case.

{¶ 22} This claim need not detain us long. Res judicata is an affirmative defense. While raising the defense may preclude the commission from reconsidering an issue decided in an earlier order, it does not divest the commission of jurisdiction over the second proceeding. *State ex rel. Wilson–Simmons v. Lake Cty. Sheriff's Dept.*, 82 Ohio St.3d 37, 40, 693 N.E.2d 789 (1998).

---

3. Ohio Power abandons its jurisdiction theory on rebuttal in favor of a new legal theory: collateral estoppel must be applied to commission proceedings—without exception—whenever the commission seeks to reconsider a finding of fact made in a prior order. Ohio Power is barred from raising new arguments for the first time in reply. *See Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 54.

{¶ 23} Ohio Power's reliance on *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 42 Ohio St.2d 403, 330 N.E.2d 1 (1975), and *Consumers' Counsel*, 16 Ohio St.3d 9, 475 N.E.2d 782, in this context is equally misplaced. *Cleveland Elec.* did not involve res judicata or collateral estoppel. And while we held that res judicata/collateral estoppel did apply in *Consumers' Counsel*, we did not hold in that case that the commission lacked jurisdiction over the matters under review. *See id.* at 10–11.

### 3. The commission's order deprived Ohio Power of its right to withdraw its ESP application in violation of R.C. 4928.143(C)(2)(a)

{¶ 24} Ohio Power argues that the commission's orders in this case deprived it of its right under R.C. 4928.143(C)(2)(a) to withdraw its application for approval of the ESP after the commission decided to approve only a modified version of the ESP. When considering an ESP application, R.C. 4928.143(C)(1) requires the commission to do one of three things: (1) approve, (2) modify and approve, or (3) disapprove the application. Under R.C. 4928.143(C)(2)(a), if the commission issues an order that modifies and approves an application, the utility "may withdraw the application, thereby terminating it, and may file a new standard service offer." Ohio Power asserts that the commission deprived the company of the statutory right to withdraw the modified ESP, because the plan was modified well after it had expired. We agree.

{¶ 25} In the ESP Order, the commission determined that carrying charges on the deferred fuel costs would be calculated using Ohio Power's WACC rate during the period when the fuel costs were deferred (2009 through 2011) and also during the period when Ohio Power would recover the deferred fuel costs (2012 through 2018). ESP Order at 20–21, 23. In this case, the commission found it necessary to depart from the WACC rate that had been approved in the ESP Order. The commission determined that the WACC rate would still apply during the deferral period, consistent with the ESP Order. But once the recovery period began in 2012, the commission determined, Ohio Power should no longer use the WACC, but instead should calculate carrying charges at its long-term-cost-of-debt rate until the costs were fully recovered. PIRR Order at 17–18.

{¶ 26} Despite arguments to the contrary, the commission's PIRR Order modified a previously approved term of Ohio Power's first ESP, and thereby reduced the company's recovery of carrying charges by approximately $130 million. If the commission makes a modification to a proposed ESP that the utility is unwilling to accept, R.C. 4928.143(C)(2)(a) allows the utility to withdraw the ESP application. The modification made below, however, occurred after the ESP had expired, making it impossible for Ohio Power to exercise its statutory right to withdraw the modified ESP. Therefore, we find that the commission's order violates R.C. 4928.143(C)(2)(a).

### a. The commission's reading of R.C. 4928.143(C)(2)(a) is unreasonable

{¶ 27} The commission found that the statutory right to withdraw was not implicated in this case, because R.C. 4928.143(C)(2)(a) "specifically pertains to the Commission's approval and modification of an *application* for an ESP." (Emphasis added.) Fifth Entry on Rehearing at 15. Because this case does not involve approval of an ESP application, the commission determined that the statutory withdrawal provision "ha[d] no bearing on the outcome." *Id.*

{¶ 28} We generally defer to the commission's statutory interpretation, but only if it is reasonable. *See In re Application of Columbus S. Power Co.*, 134 Ohio St.3d 392, 2012-Ohio-5690, 983 N.E.2d 276, ¶ 38. R.C. 4928.143(C)(2)(a) provides that "[i]f the commission modifies and approves an application under division (C)(1) of this section, the electric distribution utility may withdraw the application * * *." The commission determined that the withdrawal provision applies only when the commission modifies and approves an ESP *application* within the context of an ESP proceeding, but does not apply to later proceedings in which the commission modifies an *order* that had previously approved an ESP application. We find the commission's interpretation unreasonable.

{¶ 29} What the commission overlooks is that when it modified the ESP Order in this case, it effectively modified the *application* that was approved by that order. R.C. 4928.143(C)(1) requires the commission to issue an *order* when it modifies and approves an ESP application, which the commission did in the first ESP proceeding. The commission's ESP Order approved the use of the WACC rate during the collection period, as proposed by Ohio Power in its ESP application. Thus, when the commission modified the ESP Order in this case to prohibit the continued use of the WACC rate, it modified a term that was proposed in the company's ESP application. And because the modification of that term occurred after the ESP had expired, Ohio Power was unable to withdraw its ESP.

{¶ 30} The commission's interpretation nullifies the clear purpose of R.C. 4928.143(C)(2)(a), namely, to allow a utility to withdraw its proposed ESP if it dislikes the commission's modifications. But broader problems exist with the commission's reading. As read by the commission, R.C. 4928.143(C)(2)(a) applies only when the commission is deciding the fate of the ESP application. On this reading, the commission could modify an ESP at any time after the application has been approved—even while the ESP is still in effect—and the utility would have no recourse but to implement the change. This would hardly be a "just and reasonable result." R.C. 1.47(C).

### b. The commission's "ongoing supervision and jurisdiction" does not allow it to violate other statutory provisions

{¶ 31} The commission also found that its "ongoing supervision and jurisdiction" over the rate phase-in allowed it to modify the ESP Order. PIRR Order at

18; Fifth Entry on Rehearing at 15. *See* R.C. 4905.04 et seq.; R.C. 4928.144. As discussed above, the commission does have authority to revisit and modify earlier regulatory decisions. *See generally Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 18. The commission also has broad discretion under R.C. 4928.144 to authorize utilities to phase in rates. *See In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 568, 2011-Ohio-4129, 954 N.E.2d 1183, ¶ 10–11; *In re Application of Ohio Power Co.*, 140 Ohio St.3d 509, 2014-Ohio-4271, 20 N.E.3d 699, ¶ 27.

{¶ 32} This authority, however, is not unlimited; the new regulatory course must also be permissible under the statutory scheme. *See In re Application of Columbus S. Power Co.*, 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 52. Fundamentally, "[t]he PUCO, as a creature of statute, has no authority to act beyond its statutory powers." *Discount Cellular, Inc. v. Pub. Util. Comm.*, 112 Ohio St.3d 360, 2007-Ohio-53, 859 N.E.2d 957, ¶ 51. So whatever authority the commission has to modify the structure of the phase-in must be exercised in compliance with other relevant statutory provisions.

### c. The commission's reliance on *In re Columbus S. Power Co.*, 129 Ohio St.3d 568, 2011-Ohio-4129, 954 N.E.2d 1183, is misplaced

{¶ 33} On rehearing, the commission cited *In re Columbus S. Power Co.*, 129 Ohio St.3d 568, 2011-Ohio-4129, 954 N.E.2d 1183, as authority for modifying the ESP Order. Fifth Entry on Rehearing at 14. In the order under review in that case, the commission had exempted a charge—known as the economic-development rider—from the rate caps established in the earlier ESP order. On appeal, we upheld the commission's decision to modify the ESP order to exempt the rider from the rate caps, reasoning that the commission has (1) broad discretion to phase in rates under R.C. 4928.144 and (2) inherent authority to revisit and modify prior rate orders. *In re Columbus S. Power Co.* at ¶ 7–12.

{¶ 34} While we agree with the commission that similarities exist between the economic-development-rider case and this one, we nevertheless find this case distinguishable for two reasons. First, the statutory right to withdraw a modified ESP in R.C. 4928.143(C)(2)(a) was not at issue in the economic-development-rider case. Second, we stated in the economic-development-rider case that the commission has discretion to revisit earlier regulatory orders and modify them prospectively, provided the new regulatory course is permissible. *In re Columbus S. Power Co.* at ¶ 8. Indeed, we upheld the commission's order in that case because IEU—the appellant in that case—failed to demonstrate that the decision to modify the ESP order was unlawful or unreasonable. *Id.* In contrast, Ohio Power has shown here that the commission's modification was unlawful.

#### 4. Ohio Power has forfeited its remaining propositions of law

{¶ 35} Ohio Power offers three other propositions of law: (1) the commission may not reverse factual findings made in a prior order, (2) the precedent and rationale relied on by the commission do not justify changing the ESP Order, and (3) the commission failed to consider the financial decisions made by Ohio Power in reliance on the ESP Order. Ohio Power has forfeited the ability to challenge these alleged errors.

{¶ 36} R.C. 4903.13 establishes that the procedure for seeking reversal of a commission order is through a notice of appeal "setting forth the order appealed from and the errors complained of." Ohio Power listed two assignments of error in its notice of appeal: (1) the commission's modification of the ESP Order was barred by res judicata and collateral estoppel and (2) the commission deprived the company of its right to withdraw the ESP under R.C. 4928.143(C)(2)(a). We therefore lack jurisdiction to consider Ohio Power's remaining arguments. *Cincinnati Gas & Elec. Co. v. Pub. Util. Comm.*, 103 Ohio St.3d 398, 2004-Ohio-5466, 816 N.E.2d 238, ¶ 21; *In re Complaint of Smith v. Ohio Edison Co.*, 137 Ohio St.3d 7, 2013-Ohio-4070, 996 N.E.2d 927, ¶ 25–28.

### B. IEU's Cross–Appeal

{¶ 37} IEU argues on cross-appeal that the commission erred when it failed to require Ohio Power to account for accumulated deferred income taxes ("ADIT") when calculating the carrying charges. This argument is barred, but understanding the argument requires a brief explanation of ADIT.

#### 1. Background on ADIT

{¶ 38} According to the Revised Staff Report, ADIT results when a fuel expense is incurred in a different period from the period in which a company collects revenue to pay the expense. If the revenue and expense occur in the same period, there is no tax impact, as the components will be treated the same for financial-reporting and tax-reporting purposes. But where, as here, costs are incurred during one period and collected from ratepayers during another, federal tax laws allow the utility to deduct the fuel expense for income-tax purposes when it is incurred. The result here was that Ohio Power was able to lessen its income-tax burden during the deferral period. For purposes of regulatory accounting, a utility records the deferred fuel costs as an expense for future recovery. Thus, when the deferred fuel costs are recovered in rates, the company's taxable income will increase and taxes then become due. That is, ADIT represents taxes that are payable in the future. Until then, the company reports ADIT in a separate account on its books. Revised Staff Report at 7–11.

## 2. IEU's accumulated deferred-income-tax argument is barred by collateral estoppel

{¶ 39} IEU argues that ADIT reflects a temporary tax savings to the company and is a source of funds that the company can use until the taxes become payable. According to IEU, the ADIT is a source of cost-free capital that is funded by ratepayers and not investors and, thus, Ohio Power should be required to reduce the deferred-fuel-costs balance to reflect that capital and thereby reduce the carrying charges. The commission found that no ADIT adjustment was required for the purpose of calculating carrying charges. PIRR Order at 19; Fifth Entry on Rehearing at 7–8. On appeal, IEU argues that the commission's failure to adjust deferral balances for ADIT violated generally accepted accounting principles, state policy, sound regulatory practices and principles, and precedent.

{¶ 40} We hold that IEU's argument is barred by collateral estoppel. The doctrine of collateral estoppel serves to prevent the relitigation in a second action of an issue that was litigated and decided in a prior action involving the same parties. Issue preclusion applies even if the causes of action differ. *O'Nesti v. DeBartolo,* 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, at ¶ 7, citing *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998). *See also Consumers' Counsel v. Pub. Util. Comm.*, 16 Ohio St.3d at 10, 475 N.E.2d 782 (applying collateral estoppel to bar litigation of an issue in a second commission proceeding).

{¶ 41} The requisite identity of parties and issue exists here. This exact issue was litigated in Ohio Power's first ESP case, and the commission found that R.C. 4928.144 barred using ADIT to reduce the deferred-fuel-costs balance. ESP Order at 21–24. IEU was a party to the ESP proceedings, and it also raised challenges to the ESP Order on appeal. Yet IEU never raised any objection to the commission's ADIT ruling at the commission or on appeal to this court. *See In re Application of Columbus S. Power,* 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655. And though there are exceptions to applying collateral estoppel to administrative proceedings, IEU offers no compelling reason why the doctrine should not be applied to this matter. *See Jacobs v. Teledyne, Inc.,* 39 Ohio St.3d 168, 171, 529 N.E.2d 1255 (1988) (lead opinion); *Set Prods., Inc. v. Bainbridge Twp. Bd. of Zoning Appeals,* 31 Ohio St.3d 260, 263, 510 N.E.2d 373 (1987).

{¶ 42} Therefore, we hold that IEU lost its opportunity to challenge the commission's ADIT determination when it failed to object to that ruling in the first ESP case. *See Consumers' Counsel v. Pub. Util. Comm.* at 10. Based on our determination, we do not decide whether the commission properly refused to adjust the deferred-fuel-costs balance to account for ADIT.

## V. CONCLUSION

{¶ 43} Ohio Power has shown that the commission violated R.C. 4928.143(C)(2)(a) when it modified the terms of its previously approved ESP. Therefore, we reverse the commission's orders on this issue and remand the cause to the commission for reinstatement of the WACC rate.

{¶ 44} As to the cross-appeal, we hold that collateral estoppel bars IEU's challenge to the commission's refusal to adjust the deferred-fuel-costs balance to account for ADIT. Therefore, the cross-appeal is dismissed.

Orders affirmed in part<br>
and reversed in part,<br>
and cause remanded.

O'CONNOR, C.J., and LANZINGER, and FRENCH, JJ., concur.

PFEIFER, O'DONNELL, and O'NEILL, JJ., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 45} Ultimately, a majority of this court concludes that the commission cannot change the carrying-charge rate on the deferred fuel costs because "the plan was modified well after it had expired." Majority opinion at ¶ 24. But at its core, the modification does not affect Ohio Power Company's electric-security plan ("ESP") in any way. The ESP has expired and cannot be changed. The commission merely, after considering all the factors, determined that the rate of return that American Electric Power ("AEP"), the owner of Ohio Power, stands to receive during the recovery period is excessive.

{¶ 46} When the commission approved the ESP, the economy was at its nadir and the commission was dealing with an economic environment riddled with uncertainty. Based on what it knew then, it determined that an 11.15 percent rate of return, AEP's weighted average cost of capital, was reasonable. Several years later, after seeing the economy recover somewhat, but also seeing interest rates remain mired near zero, the commission has determined that that rate of return is excessive. It is, of course, correct in that assessment. At this time, it considers a rate of return of 5.34 percent, which corresponds with AEP's historic cost-of-debt rate, to be reasonable. I agree.

{¶ 47} The commission is not changing the ESP; nothing in its order affects the rate of return that AEP has hitherto received. Instead, the commission has concluded that the rate of return should be adjusted going forward. AEP would not be harmed in any way by a change in the rate of return. It would continue to receive an excellent rate of return during the recovery period, even at the "mere" 5.34 percent ordered by the commission. (It is unlikely that many members of

the public that AEP serves would be unhappy receiving a guaranteed rate of return of 5.34 percent.) Of course, a majority of this court has determined that AEP is entitled to the grossly excessive 11.15 percent, which is absurdly high given the current interest-rate environment.

{¶ 48} My incredulity at the decision of this court is magnified because of the windfall that AEP recently received when it was allowed by this court to retain $368 million dollars of charges that the commission considered unjustified. *In re Application of Columbus S. Power Co.*, 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, ¶ 56. Today, it receives another unwarranted $130 million. These munificent windfalls do not materialize from thin air; they are commandeered from hardworking Ohioans. How many Christmas gifts does this court believe AEP is entitled to?

{¶ 49} I dissent.

O'DONNELL and O'NEILL, JJ., concur in the foregoing opinion.

---

Matthew J. Satterwhite and Steven T. Nourse; Porter, Wright, Morris & Arthur, L.L.P., Kathleen M. Trafford and Daniel R. Conway, for appellant and cross-appellee.

McNees, Wallace & Nurick, L.L.C., Samuel C. Randazzo, Frank P. Darr, and Matthew R. Pritchard, for appellee and cross-appellant.

Michael DeWine, Attorney General, William L. Wright, Section Chief, and Thomas W. McNamee and Ryan P. O'Rourke, Assistant Attorneys General, for appellee and cross-appellee.

Whitt Sturtevant, L.L.P., Mark A. Whitt, and Andrew J. Campbell, urging reversal for amicus curiae, East Ohio Gas Company.