Kennedy, J., concurring.
*301 {¶ 50} I agree with the lead opinion's resolution of the trade-secret issues and concur in reversing the order of the Public Utilities Commission and remanding the cause for further proceedings, consistent with the lead opinion, regarding those issues. I also agree with the lead opinion that the commission engaged in unlawful retroactive ratemaking when it ordered the FirstEnergy companies (Ohio Edison Company, Cleveland Electric Illuminating Company, and Toledo Edison Company [ (collectively, "FirstEnergy") ] ) to refund previously recovered renewable-energy-credit ("REC") costs to ratepayers and that the commission's order should be reversed on that issue. I write separately, however, because we need look no further than the language of the relevant statutes to determine that the commission engaged in unlawful retroactive ratemaking.
{¶ 51} This case originates from the first electric security plan ("ESP") FirstEnergy filed with the commission after the General Assembly enacted 2008 Am.Sub.S.B. No. 221 ("S.B. 221").[3] In addition to establishing the framework for FirstEnergy's ESP, S.B. 221 also required FirstEnergy to provide "a portion of the electricity supply required for its standard service offer" from "renewable energy resources." R.C. 4928.64(B)(1). Among other measures, in order to comply with the renewable-energy provisions, an electric-distribution utility could purchase RECs. See former R.C. 4928.65, as enacted in S.B. 221, now renumbered R.C. 4928.645 and modified.
{¶ 52} Without citing a statute that gives the commission authority to issue a refund when that refund order is not contained in the tariff, the opinion concurring in part and dissenting in part nevertheless concludes that the commission did not engage in retroactive ratemaking in this case. I disagree.
*13 {¶ 53} While the General Assembly in S.B. 221 enacted some new provisions regarding the ratemaking process for certain purposes, compare R.C. 4928.143(B)(2)(a), (C), (E), and (F)with R.C. 4909.15, 4909.17, 4909.18, and 4909.19, the General Assembly nevertheless specified that ESP distribution rates were subject to the traditional ratemaking requirements of an application before the commission, preapproval by the commission, and the filing of rates with the *302 commission prior to collection. And the General Assembly in S.B. 221 left untouched the filed-rate doctrine codified at R.C. 4905.32, which provides:
No public utility shall charge, demand, exact, receive, or collect a different rate, rental, toll, or charge for any service rendered, or to be rendered, than that applicable to such service as specified in its schedule filed with the public utilities commission which is in effect at the time. No public utility shall refund or remit directly or indirectly, any rate * * * or charge * * * except such as are specified in such schedule * * *.
{¶ 54} In matters of statutory construction, "[w]here the language of a statute is plain and unambiguous * * * there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is applied, not interpreted." Sears v. Weimer , 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus. The language of R.C. 4905.32 is plain and unambiguous.
{¶ 55} In the past we have stated that "rates approved by and filed with the commission are the lawful rates," In re Complaint of Pilkington N. Am., Inc. , 145 Ohio St.3d 125, 2015-Ohio-4797, 47 N.E.3d 786, ¶ 31, and that "the commission may not engage in retroactive rate-making," Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co. , 166 Ohio St. 254, 257, 141 N.E.2d 465 (1957). Therefore, a utility has "no option but to collect the rates set by the commission and is clearly forbidden to refund any part of the rates so collected." Id. Moreover, while the commission has the authority to oversee rates, "the commission has the power to invalidate a rate schedule and fix new rates, [but] this ratemaking power is prospective only." In re Fuel Adjustment Clauses for Columbus S. Power Co. & Ohio Power Co., 140 Ohio St.3d 352, 2014-Ohio-3764, 18 N.E.3d 1157, ¶ 28, citing Ohio Util. Co. v. Pub. Util. Comm. , 58 Ohio St.2d 153, 157-158, 389 N.E.2d 483 (1979) ; see also Lucas Cty. Commrs. v. Pub. Util. Comm. , 80 Ohio St.3d 344, 348, 686 N.E.2d 501 (1997).
{¶ 56} FirstEnergy filed an application for a standard service offer ("SSO"), in the form of an ESP in accordance with R.C. 4928.143. In re Application of Ohio Edison Co. , Pub. Util. Comm. Nos. 08-935-EL-SSO, 09-21-EL-ATA, 09-22-EL-AEM, and 09-23-EL-AAM, 2009 WL 874475, 2009 Ohio PUC LEXIS 279, *8-9 (Mar. 25, 2009). The commission issued an opinion and order that approved FirstEnergy's proposed ESP with certain modifications. Id. at *9. Subsequently, FirstEnergy withdrew its application. Id.
{¶ 57} FirstEnergy then filed an amended application with an ESP that was stipulated to by both FirstEnergy and the commission. Id. at *11. The renewable-energy rider at issue here was approved by the commission as part of that stipulated ESP. Id. at *17-18.
*303 {¶ 58} While I agree that under the terms of the stipulated ESP, FirstEnergy was permitted to recover only prudently incurred costs of purchasing RECs, the stipulated ESP, as finalized and approved by the commission, did not include a provision *14 that REC costs that were not "prudently incurred" were refundable to ratepayers.
{¶ 59} The concurring and dissenting opinion concludes that FirstEnergy forfeited any argument that the refund is prohibited by R.C. 4905.32. However, I categorically reject that conclusion.
{¶ 60} When an appellant raises grounds for rehearing before the commission, this court has required the appellant to use a "rifle"-not a "shotgun"-in order to preserve an issue for appeal to this court. Cincinnati v. Pub. Util. Comm. , 151 Ohio St. 353, 378, 86 N.E.2d 10 (1949). Here, in its application for rehearing before the commission, FirstEnergy argued that the commission "unlawfully required the companies to refund monies collected under duly authorized rates and thus the order mandates impermissible retroactive ratemaking."
{¶ 61} In support of its argument, FirstEnergy quoted R.C. 4905.32, italicizing for emphasis the statutory language prohibiting refunds unless they are "specified in such schedule ." This citation of R.C. 4905.32 as part of FirstEnergy's retroactive-ratemaking argument complies with the statutory requirement of R.C. 4903.10(B) that appellants are to specifically raise issues in applications for rehearing. In accord with our holding in Cincinnati , FirstEnergy argued that the language of R.C. 4905.32 prohibits the commission from ordering a refund when refund language is not contained in the tariff, and FirstEnergy used a "rifle"-not a "shotgun"-in properly preserving this issue for appeal to this court.
{¶ 62} In denying FirstEnergy's request for a rehearing, the commission ignored FirstEnergy's R.C. 4905.32 argument and chose instead to continue to rely on the reasoning expressed in its initial order that it did not engage in unlawful retroactive ratemaking based on our decision in River Gas Co. v. Pub. Util. Comm. , 69 Ohio St.2d 509, 433 N.E.2d 568 (1982). However, the commission's reliance on River Gas is misplaced for two reasons.
{¶ 63} The first reason the commission's reliance on River Gas is mistaken is that River Gas did not involve ratemaking. Id. at 512-513, 433 N.E.2d 568. The fuel-cost-adjustment provisions enacted by the General Assembly in R.C. 4905.302 in the form of the Uniform Purchased Gas Adjustment ("UPGA") clause authorized natural-gas companies to pass variable fuel costs directly to consumers without application or preapproval by the commission. River Gas at 513, 433 N.E.2d 568. Because the rates varied without an application before, or prior approval of, the commission, the UPGA rates were a statutorily authorized departure from the commission's ratemaking and preapproval authority. Id. at 512-513, 433 N.E.2d 568. Therefore, we concluded that the UPGA rates did not constitute "ratemaking in its usual and customary *304 sense." Id. at 513, 433 N.E.2d 568. "It is axiomatic that before there can be retroactive ratemaking, there must, at the very least, be ratemaking ." (Emphasis sic.) Id. at 512, 433 N.E.2d 568.
{¶ 64} The second reason the commission's reliance on River Gas is misplaced is that R.C. 4905.302 mandated that the UPGA clause be included in every tariff of all natural-gas companies. Id. at 509-511, 433 N.E.2d 568. In promulgating the UPGA rule under the authority given by the legislature, the commission included a Gas Cost Recovery ("GCR") rate. Id. at 510, 433 N.E.2d 568. One of the several factors in determining the GCR rate was the amount of refunds natural-gas companies received from suppliers. Id. The tariff at issue in River Gas contained the UPGA clause as required by law. Id. at 511, 433 N.E.2d 568.
*15 {¶ 65} Contrary to the UPGA rates at issue in River Gas , the renewable-energy rates at issue here were ratemaking in the traditional sense. In River Gas , we stated that traditional ratemaking includes three steps: an application before the commission, preapproval by the commission, and the filing of the rate with the commission prior to the collection of the rate. Id. at 512-513, 433 N.E.2d 568.
{¶ 66} FirstEnergy's stipulated ESP application was filed with the commission, and it included the renewable-energy rates as required by law. See R.C. 4928.143(A) ; R.C. 4928.64(B)(1). The ESP required preapproval by the commission. See R.C. 4928.143(C). And prior to the rates being charged to customers, they were filed with the commission. See R.C. 4905.32 ; see also, e.g., Rider AER tariff sheet No. 84, filed by Ohio Edison Company in Pub. Util. Comm. case Nos. 08-935-EL-SSO, 09-21-EL-ATA, 09-22-EL-AEM, 09-23-EL-AAM, and 89-6006-EL-TRF on June 1, 2011 (eff. July 1, 2011), available at http://dis.puc.state.oh.us/DocumentRecord.aspx?DocID=1772a830-ed7e-4c0c-b28f-538392e9b82b. If the commission intended to order a refund of any part of the rates, then the legislature gave the commission the discretionary authority to do so. All the commission had to do was require a refund clause to be part of the tariff pursuant to R.C. 4905.32.
{¶ 67} As a creature of statute, the commission " 'has no authority to act beyond its statutory powers.' " In re Application of Ohio Power Co. , 144 Ohio St.3d 1, 2015-Ohio-2056, 40 N.E.3d 1060, ¶ 32, quoting Discount Cellular, Inc. v. Pub. Util. Comm. , 112 Ohio St.3d 360, 2007-Ohio-53, 859 N.E.2d 957, ¶ 51. Because the tariff at issue here did not specify a refund, the commission's order of a refund of REC costs was unlawful retroactive ratemaking.
{¶ 68} The "statutory and case law concerning retroactive ratemaking spans nearly 50 years." In re Application of Columbus S. Power Co. , 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 13. In matters of statutory construction, we presume that the legislature "knows the existing condition of the law, whether *305 common law * * * or statute law." Wachendorf v. Shaver , 149 Ohio St. 231, 248, 78 N.E.2d 370 (1948), citing State ex rel. Morris v. Sullivan , 81 Ohio St. 79, 90 N.E. 146 (1909), Norris v. State , 25 Ohio St. 217 (1874), Johnson v. Johnson , 31 Ohio St. 131 (1876), and S. Sur. Co. v. Std. Slag Co. , 117 Ohio St. 512, 159 N.E. 559 (1927). Therefore, if the General Assembly intended the REC rates to operate like the UPGA rates at issue in River Gas when it enacted S.B. 221, it could have written the law that way, but it did not.
{¶ 69} While I am sympathetic to the problem identified by the concurring and dissenting opinion that the holding of a majority of the court "reduces the entire audit review of FirstEnergy's REC purchases to an exercise in futility," id. at ¶ 87, absent the commission's compliance with the language of the controlling statutory provision, R.C. 4905.32, the commission as a creature of statute has no authority to act. See In re Application of Ohio Power Co. at ¶ 32. Under the plain language of the statute, once a rate has been approved and filed with the commission, no refund is possible unless the refund language is in the commission's order establishing the rate. See R.C. 4905.32.
{¶ 70} It is within the sole province and sound discretion of the General Assembly to balance the needs of the commission, the utilities, and consumers.
"In adopting a comprehensive scheme of public utility rate regulation, the Legislature has found it impossible to do absolute justice under all circumstances. For example, *16 under present statutes a utility may not charge increased rates during proceedings before the commission seeking same and losses sustained thereby may not be recouped. Likewise, a consumer is not entitled to a refund of excessive rates paid during proceedings before the commission seeking a reduction in rates. Thus, while keeping its broad objectives in mind, the Legislature has attempted to keep the equities between the utility and the consumer in balance but has not found it possible to do absolute equity in every conceivable situation."
Keco Industries , 166 Ohio St. at 259, 141 N.E.2d 465, quoting the trial court's opinion in that case. Because we are required neither to be assigned nor allowed "tasks that are more properly accomplished by [other] branches," Morrison v. Olson , 487 U.S. 654, 680-681, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), we must "apply the statute as written," State v. J.M. , 148 Ohio St.3d 113, 2016-Ohio-2803, 69 N.E.3d 642, ¶ 12, citing Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife , 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 12.
{¶ 71} Because the language of R.C. 4905.32 is plain and unambiguous, the commission engaged in unlawful retroactive ratemaking. Therefore, based on that *306 ground alone, I would reverse the order of the commission on the retroactive-ratemaking issue. I concur in reversing the order of the commission and remanding the cause for further proceedings, consistent with the lead opinion, on the trade-secret issues.
O'Donnell and DeWine, JJ., concur in the foregoing opinion.

For a concise history of electricity deregulation and the statutory scheme enacted in S.B. 221, see In re Application of Columbus S. Power Co. , 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 2-6.